UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONOKIA S. EMBRY,

    Plaintiff,

v.                                                                                  Case No. 1:10-cv-991

                                                           Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

        Plaintiff was born on September 1, 1961 (AR 32).[1]  She has a high school diploma (AR 34). Plaintiff had previously filed applications for disability insurance benefits (DIB) and SSI on January 10, 2003 (AR 10). Those claims were denied initially, and by an Administrative Law Judge (ALJ) in a decision dated February 24, 2006 (AR 10 ,65-71).[2]  The present appeal involves an SSI application filed on November 30, 2006, in which plaintiff alleged a disability onset date of December 1, 2002 (AR 10, 107). Plaintiff subsequently amended the disability onset date to February 7, 2007 (AR 10). Plaintiff had previous employment as a cashier, clerk and cook  (AR 112). Plaintiff  identified her disabling conditions as:  fibromyalgia; bipolar disorder; anxiety;

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that the decision under consideration in this appeal, incorrectly identifies the earlier decision as dated February 24, 2004 (AR 10).

depression; high blood pressure; aches in joints; difficulties in moving, sitting or standing for long periods; and "chronic non stop pain" (AR 111). On February 5, 2010, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 10-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of February 7, 2007 (AR 12). At step two, the ALJ found that plaintiff suffered from severe impairments as follows: fibromyalgia; a bipolar disorder; an anxiety disorder; degenerative joint disease of the lumbar spine; and a history of polysubstance abuse (AR 12). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. (AR 13). In this regard, the ALJ specifically considered Listing 1.02 (Major dysfunction of a joint(s) (due to any cause)); Listing 1.04(Disorders of the spine); Listing 12.04 (Affective disorders); Listing 12.06 (Anxiety related disorders); and Listing 12.09 (Substance addiction disorders).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform sedentary work as defined in 20 CFR416.967(a). She can lift and carry ten pounds maximum occasionally and less than ten pounds frequently and can stand and walk up to two hours, and sit at least six hours, in a typical eight-hour work day. She requires the ability to alternate sitting and standing every 30 minutes. She

>    can never climb ladders, scaffolds, ropes; only occasionally climb ramps or stairs, balance, stoop, crouch, kneel, crawl or squat; must avoid even moderate exposure to extreme heat and cold; can never use air, pneumatic, power, torque, or vibratory tools; and can never work with dangerous or unprotected machinery or at unprotected heights. The claimant is limited to simple, unskilled work with an SVP rating of only 1 or 2; work that requires only brief and superficial contact with the public; and work that allows more relaxed standards regarding personal dress and hygiene than in a general office setting.

(AR 15). The ALJ further found that plaintiff could not perform any of her past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 19-20). Specifically, plaintiff could perform 4,110 jobs in the regional economy (defined as the Lower Peninsula of the State of Michigan) such as surveillance system monitor (650 jobs), order clerk (600 jobs), addressing clerk (670 jobs), sedentary bench assembler (1,690 jobs), and sedentary bench inspector (500 jobs) (AR 19-20). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since the amended alleged onset date of February 7, 2007 (AR 20-21).

### III. ANALYSIS

Plaintiff's appeal consists of one issue with two sub-issues.

**A.   The Commissioner has failed to establish by a preponderance of the evidence that claimant can perform substantial gainful activity that exists in substantial numbers.**

**1.   There is no justification for the Commissioner's failure to consider the medical testimony of treating physicians.**

Plaintiff contends that the ALJ failed to consider the testimony of three individuals which she identified as treating physicians: Sue Bowden LMSW (licensed master social worker); Laurence Domino, M.D., a psychiatrist; and Niti Thakur, M.D., a rheumatologist. Plaintiff's Brief

at pp. 12-13 (docket no. 9).  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).  An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

      **a.**     **Ms. Bowden**

Sue Bowden, LMSW, worked with plaintiff on various occasions (AR 13, 17-18). Plaintiff's counsel relies on a mental RFC assessment prepared by Ms. Bowden on March 12, 2009.

Plaintiff's Brief at pp. 12-13.[3] In this document, (which consists of an undated and unsigned partial photocopy of a mental RFC assessment), Ms. Bowden stated that plaintiff was markedly limited in: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (AR 570-72). The ALJ discounted the RFC assessment after noting that no rationale or other explanation was appended to the form and that nothing in Ms. Bowden's progress notes suggest marked limitations in these areas of functioning (AR 17-18).

The ALJ could properly discount Ms. Bowden's opinions because she is not an acceptable medical source under 20 C.F.R. § 416.913. While Ms. Bowden's opinion can be considered as evidence from an "other" medical source, it is not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. § 416.913(d)(1) (evidence from "other" non-medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists). *See also, Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source). Furthermore, the ALJ reviewed Ms. Bowden's opinion

---

[3] Plaintiff erroneously cites Ms. Bowden's RFC assessment as appearing at AR 601. The assessment actually appears at AR 572.

7

consistent with SSR 06-3p,[4] which advises that opinions from other medical sources, such as nurse practitioners, physician's assistants and licensed clinical social workers "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." The ALJ properly considered the opinion of Mrs. Bowden and plaintiff's claim of error should be denied with respect to that opinion.

### b. Dr. Domino

Plaintiff relies on a comment from Dr. Domino as follows:

> Dr. Laurence Domino of Sparrow Behavioral Health commented on Ms. Embry's impairments to say that she would be in need of special consideration in the work place, it would mean that **even if she was given unskilled tasks she would still be unable to concentrate in order to complete them**. (TR 654).

Plaintiff's Brief at p. 12 (emphasis in original).[5] The ALJ identified this comment as made in a mental RFC assessment located in Exhibit 24F at pp. 3-5 (AR 18, 624-26). In the mental RFC assessment, Dr. Domino found that plaintiff was "moderately" limited in a number of areas of functioning (AR 624-26). At the end of the report, Dr. Domino stated:

> Tonokia Embry has moderate impairments in multiple domains, which result in need for special supervision, special considerations in a work-setting, even if she were given unskilled tasks. She would not be able to sustain concentration or pace even if given simple tasks, and would need special supervision and considerations for psychologically based interruptions. DA and A [sic] is not material. Her impairment is chronic and despite some symptomatic improvement with treatment, her functional limitations remain, as rated based on exam today, 8/5/09.

(AR 626).

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

[5] Plaintiff erroneously cites Dr. Domino's RFC assessment as appearing at AR 654. The assessment actually appears at AR 624-26.

The ALJ discounted these comments because (1) these conditions were improved from the previous year (2008), when Dr. Domino indicated in a checklist supplied to the State of Michigan (presumably for Medicaid assistance) that plaintiff was markedly limited in almost every area of functioning; (2) that the acute symptomatology identified by the doctor in 2008 was not supported by his treatment notes (identified as Exhibits 4F, 13F, 19F and 24F); (3) that the August 2009 form prepared for the SSA found that plaintiff was at most moderately limited in her functioning; (4) that the doctor's opinion stated that plaintiff could perform simple tasks with unspecified "special considerations;" and, (5) that if plaintiff had such severe deficits, "one wonders why the [plaintiff] had not been relegated to a psychiatric hospital day program at the very least" (AR 18).  Based on this record, the ALJ reviewed Dr. Domino's opinions and articulated good reasons for not crediting those opinions. *See Wilson*, 378 F.3d at 545.  Accordingly, plaintiff's claim of error should be denied.

  c.  **Dr. Thakur**

Plaintiff points out that Dr. Thakur: prescribed numerous medications as well as physical therapy to help plaintiff with an exercise program; noted that plaintiff would be unable to sit, stand or walk for more than one half hour each and only for one hour for a combination of the activities; that plaintiff is continuously limited with left hand and finger movements; and that plaintiff's "hearing, vision and feeling is [sic] all affected by her illness."  Plaintiff's Brief at p. 13.[6]  The ALJ identified Dr. Thakur's opinions as expressed in an RFC assessment form from April 2009 (AR 18, 573-77).  The ALJ found that Dr. Thakur's restrictions were "over-stated and inconsistent

---

[6] Plaintiff erroneously cites Dr. Thakur's records (which include an RFC assessment) as appearing at AR 498, 603 and 604.  Dr. Thakur's RFC assessment actually appears at AR 573-77.

9

with the rheumatologist's own progress notes, wherein he frequently encouraged the claimant to exercise more and work on her home exercise program as prescribed in two rounds of physical therapy (citing Exhibits 9F, 12F, 16F, 18F and 23F)" (AR 18). The ALJ also observed:

> [T]he claimant's own reports of her daily activities, including watching television, reading, walking, and occasional cooking and shopping (Exhibit 6E, testimony), do not support the level of severe limitations Dr. Thakur suggested for the claimant's benefit. Lastly, the rheumatologist completed this form in April 2009, stating he had not seen the claimant since April 2008. Accordingly, no matter how well qualified the physician, he would not be in a position to know how an individual is truly functioning if not seen and/or examined in person in a year's time. Most of the rest of the lifting, carrying, and environmental limitations suggested by Dr. Thakur are reasonable and have been incorporated into the above residual functional capacity adopted in this decision.

(AR 18). Based on this record, the ALJ articulated good reasons for not fully crediting those opinions. *See Wilson*, 378 F.3d at 545.

Plaintiff does not address the ALJ's reasons for rejecting Dr. Thakur's severe limitations. Rather, plaintiff contends that the ALJ improperly adopted the opinions expressed by a physician's assistant, Catherine Nehil, over the opinions expressed by Dr. Thakur and asserts that "all evidence supports a finding of disability." Contrary to plaintiff's assertions, the ALJ did not adopt PA Nehil's opinions over those of the treating physicians. Rather, the ALJ found that the RFC analysis of PA Nehil, described by the ALJ as "another treating source" was afforded more weight "as she provided a much more realistic and evidence-supported opinion that the claimant could sit up to six hours, stand up to two hours, walk up to a half hour without interruption, lift and carry up to 20 pounds occasionally, and frequently grasp and perform fine finger manipulations (Exhhibit 26F)" (AR 19). The ALJ concluded that "Ms. Nehil's restrictions are supported by the evidence as a whole and are consistent with the adopted residual functional capacity" (AR 19). Accordingly, plaintiff's claim of error should be denied.

### 2. The Commissioner has erred concluding there was a preponderance of the evidence that the claimant can perform competitive employment.

Plaintiff contends that the ALJ committed two errors in finding that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 19-20). First, plaintiff contends that "[t]here has never been a determination as to whether the jobs fitting the hypothetical are significant in number." Plaintiff's Brief at p. 17. Second, plaintiff contends that the VE's testimony was inadequate:

> The evidence of an ability to perform those jobs, on prodding by the ALJ, produced only the answer that they "might" be performed. This meets no burden by proof of a preponderance of the evidence.

*Id.*

#### a. Significant number of jobs

Plaintiff contends that the 4,110 jobs identified by the vocational expert (VE) and adopted by the ALJ does not represent a significant number of jobs in the national economy sufficient to find plaintiff not disabled. *See* 20 C.F.R. § 416.966(b) (providing in pertinent part that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications"). Plaintiff's argument is without merit.

The 4,110 jobs consist of the following: surveillance system monitor (650 jobs); order clerk (600 jobs); addressing clerk (670 jobs); sedentary bench assembler (1,690 jobs); and sedentary bench inspector (500 jobs) (AR 19-20). Based on her reading of the hearing transcript, plaintiff construes the VE's testimony as finding that plaintiff could perform only 1,320 of the identified jobs,

those being the addressing clerk (670 jobs) and the surveillance system monitor (650 jobs). Plaintiff's Brief at pp. 14-17. The record reflects otherwise.

In response to a hypothetical question setting forth plaintiff's limitations (RFC), the VE found that a person with those limitations could perform 4,110 sedentary and unskilled jobs (AR 55-56). The restricted number of jobs relied upon by plaintiff are the result of a second hypothetical question posed by the ALJ:

> Okay. In addition to the restrictions previously discussed, let's say that the individual also has the following additional limitations. Limited to work that does not involve concentration on detailed precision, or simultaneous tasks. Work that involves only minimal contact interaction with co-workers, and does not require working in close proximity to co-workers. Work that involves only minimal contact and directions from a supervisor. Routine work that does not involve frequent significant changes or adaptations. Work that does not involve taking initiative, making independent decisions. Work that does not involve meeting production quotas, or goals, or keeping pace with co-workers, and work that allow more relaxed standards regarding dress and personal hygiene than a typical office setting. Would those additional limitations have any impact on the ability to do those previously cited jobs?

(AR 56). In response to this additional hypothetical, the VE responded that plaintiff "would not be able to perform the jobs previously cited" (AR 57).

On further inquiry, the VE testified that the limitations that would exclude the previous jobs would be the ability to concentrate and have direct contact with others (AR 57). With respect to the surveillance system monitor, the VE testified that while the job did not involve a lot of interaction with other people, plaintiff "would have to make decisions if she saw something going on on the screen that does not look appropriate" (AR 57). With respect to the addressing clerk, the VE testified that the jobs "might be compatible" with the second set of limitations (AR 58). While plaintiff is correct in observing that some of the 4, 110 jobs would be eliminated by the ALJ's second set of limitations, the ALJ did not adopt those additional limitations.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Plaintiff does not address any flaw in the hypothetical question relied upon by the ALJ nor articulate why the ALJ should have adopted the second set of limitations which reduced the number of available jobs. Thus, the ALJ's identification of the 4,110 jobs is supported by substantial evidence.

        **b.**     **ALJ's alleged "prodding" of the VE**

Plaintiff asserts that the ALJ "prodded" the VE into giving vocational testimony, and that the ALJ's decision was not supported by the preponderance of the evidence. Plaintiff's Brief at p. 14. The Court reviews decisions denying benefits under the "substantial evidence" standard. *See* § I. Legal Standard, *supra*. "Substantial evidence review is highly deferential." *Wilson v. Commissioner of Social Security*, 280 Fed. Appx. 456, 459 (6th Cir. 2008). Under this standard, the Court does not review the evidence de *novo*, make credibility determinations, or weigh the evidence. *See* § I. Legal Standard, *supra*. "Substantial evidence is defined as more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). However, it is unnecessary for the court to consider this alleged error because plaintiff has presented no argument or legal authority to support her contention that the ALJ somehow acted improperly in questioning the VE. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this conclusory statement of error as waived.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: January 31, 2012 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).